UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| J.M.,<br><br>              Plaintiff,<br><br>      v.<br><br>FRANK BISIGNANO, Commissioner of<br>Social Security, et al.,<br><br>              Defendants. | Case No.  25-cv-00600-SVK<br><br>**ORDER REVERSING AND<br>REMANDING COMMISSIONER'S<br>DECISION**<br><br>Re: Dkt. Nos. 15, 23 |

Plaintiff appeals from the Commissioner of Social Security's final decision denying Plaintiff's applications for disability insurance benefits and Supplemental Security Income.  The Parties have consented to the jurisdiction of a magistrate judge.  Dkt. 6, 7.  For the reasons discussed below, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case for an immediate calculation and payment of benefits.

I.      **BACKGROUND**

In January 2021, Plaintiff filed applications for disability insurance benefits and Supplemental Security Income alleging disability beginning October 1, 2018.  *See* Dkt. 8 (Administrative Record ("AR")) 365-397.  The applications were denied initially on May 7, 2021 (AR 160-171) and upon reconsideration on February 16, 2022 (AR 182-195).  On March 9, 2022, Plaintiff requested a hearing.  AR 196-201.

A hearing before an Administrative Law Judge ("ALJ") was held on February 10, 2023, but Plaintiff failed to appear.  *See* AR 84, 393.  At that hearing, the ALJ took testimony from a vocational expert.  *See* AR 84.[1]  On February 16, 2023, the ALJ issued a Form HA-L90 Request to

---

[1] The administrative record does not contain a transcript of the February 20, 2023 hearing.  At the subsequent hearing on July 14, 2023, the ALJ stated that there was a problem with the recording of the February 20, 2023 hearing.  AR 84.

Show Case for Failure to Appear informing Plaintiff that "[s]ince you did not appear at your hearing, you will need to show good cause if you still want to have a hearing with an administrative law judge" and enclosing a form for Plaintiff to complete and return.  AR 75-80. The Request to Show Cause stated that the ALJ would review Plaintiff's explanation, and "[i]f the ALJ decides that you had a good reason for missing your hearing, we will schedule another hearing for you."  AR 76.  The attorney representing Plaintiff filed a response to the Request to Show Cause on February 24, 2023.  AR 321-322.  The substance of that response is discussed in more detail in section IV.A. below.

On April 24, 2023, the ALJ issued a notice scheduling a hearing for July 14, 2023. AR 325.  That hearing was held as scheduled.  AR 81-98 (7/14/23 Hrg. Tr.).  Plaintiff did not appear at the July 14, 2023 hearing.  *See* AR 83.   Following the hearing, the ALJ again issued a Request to Show Cause for Failure to Appear.  AR 359-361.[2]  Plaintiff's attorney responded on his behalf on July 19, 2023, explaining his failure to appear and requesting a supplemental hearing. AR 351-356.  The substance of that response is discussed in more detail in section IV.A. below.

On November 1, 2023, the ALJ found that Plaintiff had not established good cause for his failure to appear and denied his request for a supplemental hearing "pursuant to HALLEX I-2-4-25(D)."  AR 357.   The ALJ stated that a decision would be made "on the record as it stands."  *Id.*

On December 11, 2023, the ALJ issued a decision denying Plaintiff's disability benefit claims.  AR 15-40 (the "ALJ Decision").  The ALJ concluded that Plaintiff has the following severe impairments:  "polysubstance use disorder, stimulant use disorder, and substance induced anxiety disorder/anxiety."  AR 21.  The ALJ found that if Plaintiff's substance use is included, the severity of his impairments meet the criteria of one of the Listed impairments, specifically section 12.06 ("Anxiety and obsessive-compulsive disorders") of 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing 12.06").  AR 22.  The ALJ also found that if Plaintiff stopped the substance use, "the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would have a severe impairment or

---

[2] The AR Index lists this document as being dated "07/21/2022" but the document itself is dated July 21, 2023.  AR 359.

combination of impairments" but would not meet or equal one of the Listings. AR 24-25. The ALJ further found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations. AR 26-29. The ALJ determined that Plaintiff is unable to perform his past relevant work. AR 29-30. However, the ALJ found that there are other jobs Plaintiff could perform. AR 30. Accordingly, the ALJ held that Plaintiff is not under a disability, as defined in the Social Security Act. AR 31.

The Appeals Council subsequently denied review of the ALJ Decision. AR 1-7. Plaintiff timely filed this action seeking review of the ALJ Decision. Dkt. 1.

In accordance with the Federal Rules of Civil Procedure Supplemental Rules for Social Security Actions, the Parties have presented the action for decision on the briefs. Dkt. 15 (Plaintiff's opening brief); Dkt. 23 (Commissioner's brief); Dkt. 23 (Plaintiff's reply brief); *see generally* Fed. R. Civ. P. Supp. SS Rule 5. The action is now ready for decision without oral argument.

## II.    ISSUES FOR REVIEW

Plaintiff raises the following issues for review:

1.    Did the ALJ err in finding Plaintiff constructively waived his right to testify?

2.    Did the ALJ err in evaluating the materiality of drugs and alcohol?

3.    Is the ALJ's paragraph C finding supported by substantial evidence?

4.    Did the ALJ err in evaluating the opinion of Dr. Catlin?

5.    Did the ALJ improperly ignore the statement of Phillip Lindeman?

6.    Should the Court remand for payment of benefits?

Dkt. 15 at 1.

## III.    STANDARD OF REVIEW

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-103 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin*., 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id*.

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks and citation omitted).

## IV. DISCUSSION

### A. Issue One: Constructive Waiver of Plaintiff's Right to Testify

The ALJ concluded that Plaintiff failed to establish good cause for his failure to appear at the July 14, 2023 hearing. AR 18. Plaintiff argues that the ALJ erred in finding that Plaintiff constructively waived his right to testify. Dkt. 15 at 3-6.

"The Supreme Court has held that applicants for social security disability benefits are entitled to due process in the determination of their claims." *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001). "It is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be

denied."  *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001).  Consistent with these principles, the Social Security Administration's ("SSA") regulations provide that a claimant has a right to appear before an ALJ, present evidence, and state his position.  20 C.F.R. §§ 404.950(a), 416.1450(a).  A claimant who does not wish to appear may send the ALJ "a waiver or a written statement indicating that you do not wish to appear at the hearing."  20 C.F.R. §§ 404.950(b), 416.950(b).  A claimant's waiver of his right to appear should be "made entirely voluntarily and [be] based on a full understanding of the results of such a decision."  SSR 79-19.

Under certain circumstances, a claimant may be found to have constructively waived his right to appear.  *See N.Z. v. Kijakazi*, No. 21-CV-01106-VKD, 2023 WL 2717257, at *2 (N.D. Cal. Mar. 29, 2023); *Golden v. Colvin,* No. 16-CV-05362-MEJ, 2017 WL 4642008, at *10 (N.D. Cal. Oct. 17, 2017).  The Social Security Hearings, Appeals and Litigation Law Manual ("HALLEX") instructs the ALJ on how to proceed when a claimant fails to appear.  *See* HALLEX Vol. I, Div. 2, Chapter I-2-4, § HA 01240.025, available at https://www.ssa.gov/OP_Home/hallex/hallex.html (last visited May 28, 2026).[3]  While HALLEX is an internal Agency manual, with no binding legal effect, this Court finds it persuasive as to these circumstances.  *See Clark v. Astrue*, 529 F.3d 1211, 1216 (9th Cir. 2008) ("[A]s an Agency manual, HALLEX is entitled to respect to the extent that it has the power to persuade") (internal quotation marks and citation omitted); *see also N.Z.*, 2023 WL 2717257, at *2–4 (considering HALLEX on the issue of whether a claimant constructively waived her right to appear).

HALLEX provides that when a claimant's representative appears without the claimant, dismissal of the claimant's request for a hearing is "never appropriate," but the ALJ "may determine that the claimant has constructively waived the right to appear at the hearing if:  [1] The representative is unable to locate the claimant; [2] The Notice of Hearing was mailed to the claimant's last known address; and [3] The agency has followed the contact procedures required by 20 CFR 404.938(c) and 416.1438(c), as described in HALLEX HA 01230.020."  HALLEX HA 01240.025(D)(2).  "If the ALJ finds that the claimant has constructively waived the right to

---

[3] HA 01240.025 was formerly numbered as HALLEX section I-2-4-25.

appear at the hearing, the ALJ need not proceed with the hearing and may choose to issue a decision on the record." HALLEX HA 01240.025(D)(2)(a). In that situation, "the ALJ will advise the appointed representative, either on the record during the hearing or in writing thereafter, that he or she will not send an HA-L90 [Request to Show Cause for Failure to Appear] to the claimant.... When done in writing, the ALJ must associate the writing with the record." *Id.* Alternatively, "[i]f the ALJ finds that the claimant has not constructively waived the right to appear at the hearing, the ALJ may choose to proceed with the hearing," and "[t]he ALJ will advise the appointed representative that the agency will send [a Request to Show Cause for Failure to Appear] to the claimant to ask why they did not appear at the scheduled hearing and whether a supplemental hearing should be held." HALLEX HA 01240.025(D)(2)(b). At the end of a short response period, the ALJ must then determine whether the claimant has constructively waived his right to appear or whether a claimant has shown good cause for the failure to appear at the hearing. *Id.* HALLEX thus contemplates two options when a claimant's representative appears at a scheduled hearing without the claimant: (1) the ALJ enters a finding on the record at the hearing or in writing after the hearing, under section (D)(2)(a); or (2) the ALJ sends a request to show cause for failure to appear to the claimant, under section (D)(2)(b). *N.Z.*, 2023 WL 2717257, at *3. Accordingly, "a claimant's failure to appear at a hearing, even when counsel appears on his or her behalf, does not alone act as a waiver of a claimant's right to appear." *Id.*

Here, the Parties agree that Plaintiff was not present for either the February 10, 2023 or July 14, 2023 hearings and that the ALJ issued Requests to Show Cause to Plaintiff after each hearing. Dkt. 15 at 4; Dkt. 23 at 4; *see also* AR 75-80 (February 2023 Request to Show Cause); AR 359-361 (July 2023 Request to Show Cause); AR 321-322 (response to February 2023 Request to Show Cause; AR 351-356 (response to July 2023 Request to Show Cause). The administrative record does not contain a transcript of the February 20, 2023 hearing, and the ALJ explained at the July 14, 2023 hearing that there was a problem with the recording of the earlier hearing. AR 84. The transcript of the July 14, 2023 hearing indicates that after the ALJ and Plaintiff's representative discussed Plaintiff's failure to appear, the ALJ stated: "[W]hat I would normally do today since the Claimant hasn't appeared and we have testimony from the prior

United States District Court
Northern District of California

6

vocational record is just issue a notice to show cause. But since the prior hearing recording is – is not sufficient, I'm going to take testimony from the vocational expert and then I will issue a notice to show cause and then go from there." AR 83-84. The hearing then proceeded with both the ALJ and Plaintiff's representative examining the vocational expert. AR 86-97. At the conclusion of the hearing, the ALJ stated: "Well, what I'll do is adjourn for today, Counsel, and issue a notice to show cause and then we'll just open them. Thank you so much, and we'll see you perhaps next time." AR 97.

The record discussed above demonstrates that the ALJ, rather than proceeding under HALLEX HA 01240.025(D)(2)(a) and advising the appointed representative that he would not send a Request to Show Cause, instead stated at the July 14, 2023 hearing that he would issue a Request to Show Cause, and in fact he did issue Requests to Show Cause after both the February and July 2023 hearings. From this record, "it appears the ALJ proceeded under section (D)(2)(b), which requires the ALJ to evaluate whether Plaintiff had shown good cause." *Golden*, 2017 WL 4642008, at *11.

In determining whether there is good cause for a claimant's failure to appear, "the ALJ must consider any physical, mental, educational, or linguistic limitations that may have prevented the claimant from appearing at the scheduled time and, if applicable, place of the hearing . . . " HALLEX HA 01240.025(B). "Good cause for failing to appear at the scheduled hearing generally exists when an unforeseeable event occurred that prevented the claimant or the appointed representative from notifying the ALJ and requesting a postponement before the scheduled hearing." HALLEX HA 01240.025(C)(1)(b); *see also Golden*, 2017 WL 4642008, at *10–11. An ALJ must base his or her decision on the circumstances of each individual case. *See* HALLEX HA 01240.025(B) ("There are no set criteria for determining what constitutes good cause for failure to appear at a scheduled hearing").

Plaintiff's representative submitted statements in response to both Requests to Show Cause explaining Plaintiff's absence. AR 321-322 (response to February 2023 request to show cause; AR 351-356 (response to July 2023 request to show cause). The first response, dated February 24, 2023, stated that Plaintiff was unable to attend the February 2023 hearing "[d]ue to [his] severe

7

mental impairments." AR 321. The response explained:

> [Plaintiff] is homeless and lives in a tent in Oakland, California. He has been diagnosed with Major Depressive Disorder, Anxiety and Obsessive-Compulsive Disorders, and Personality and Impulse-Control Disorders. Due to his severe mental impairments [Plaintiff] has difficulty attending appointments. Further, his inability to attend the hearing was due to his severe impairments and not due to his lack of cooperation or unwillingness to attend.

AR 322.

The July 19, 2023 response to the second Request to Show Cause explained that Plaintiff is homeless, "generally lives in a tent in Oakland, California," did not have a phone prior to the July 2023 hearing, and receives mail at the home of a relative, Philip Lindeman. AR 353.[4] The response explained Plaintiff's mental health issues. *Id.* In addition, according to the letter from Plaintiff's attorney:

> [Plaintiff] contacted the undersigned by telephone on July 18, 2023 and advised the undersigned that he did not attend the hearing scheduled for July 14, 2023, because he was in an altercation in the encampment where he was living on either July 12, 2023 or July 13, 2023, and he had to leave his encampment. When he returned to his tent, it had been destroyed. [Plaintiff] was injured in the altercation and was in crisis the day of the hearing because of the altercation, being injured, and being displaced from his home.

AR 353. The letter from Plaintiff's attorney stated that she had also been contacted by Plaintiff's father, who confirmed the above events and told her that "because [Plaintiff] was not located at his usual camp and had no phone, his brother, Lionel Lindeman, could not locate him to transport him to the hearing." *Id.* Plaintiff's attorney argued in the letter that:

> The medical record does support a finding of good cause for failure to appear. [Plaintiff] has been homeless for many years and is very destabilized by mental health issues. [Plaintiff's] homelessness, along with mental health issues, contribute to his difficulties to consistently engage in any services, including our representation for his SSI benefits, and to engage with the hearing process.

*Id.* Plaintiff's counsel noted that the ALJ "has the option of finding constructive waiver and make (sic) a decision on the record" but requested that Plaintiff be given an opportunity to present and

---

[4] The July 14, 2023 letter from Plaintiff's attorney identifies Mr. Lindeman as Plaintiff's father, but elsewhere in the record he is identified as Plaintiff's stepfather. *See* AR 556.

United States District Court
Northern District of California

testify at a hearing "[i]f a favorable decision cannot be made on the current record." *Id.*

Plaintiff's response to the Request to Show Cause included a letter from Mr. Lindeman stating that Plaintiff "is a homeless recovering methamphetamine addict." AR 355. He stated that he believed Plaintiff had been sober for about a year. *Id.* Mr. Lindeman confirmed Plaintiff's living situation and that Plaintiff had reported to his brother the series of events concerning an altercation in mid-July and the destruction of his tent. *Id.* Mr. Lindeman stated that Plaintiff did not attend the Social Security hearing because he did not know the day of the week and date and did not have a cell phone at the time. *Id.*

The Commissioner acknowledges in his brief in this action that Plaintiff's attorney responded to both Requests to Show Cause, including (1) filing a response after Plaintiff failed to attend the February 10, 2023 hearing "stating that he was unable to attend the hearing due to his severe mental impairments"; (2) responding to the second notice to show cause by explaining that "Plaintiff was unable to attend due to numerous difficulties, such as losing his phone, losing his tent, and having an altercation in the days before the scheduled hearing'"; and (3) submitting a statement from Plaintiff's stepfather, Phillip Lindeman, who reported information concerning Plaintiff's whereabouts in July 2023 as was communicated to him from Plaintiff's brother Lionel. Dkt. 23 at 4.

The ALJ's November 1, 2023 letter to Plaintiff's counsel states, "I have considered your arguments regarding good cause reasons noted in your July 19, 2023 letter and find that good cause has not been established." AR 357. That letter cites HALLEX 1-2-4-25(D) (which has been renumbered as HALLEX HA 01240.025(D)). *Id.* In the ALJ Decision, the ALJ found that Plaintiff had constructively waived his right to appear at the July 14, 2023 hearing, stating, "Good cause for the claimant having failed to appear was not established. As such, the claimant's request for a supplemental hearing was denied." AR 18.

Neither the ALJ's November 1, 2023 letter nor the subsequent ALJ Decision discuss the explanations submitted by Plaintiff's attorney as to why he was not present at the hearings. AR 18, AR 357. In particular, Plaintiff's submission in response to the July 2023 Request to Show Cause informed the ALJ that in the day or two before the July 14, 2023 hearing, Plaintiff

was injured in an altercation, was displaced from his tent, and had no phone. *See* AR 353. This sequence of events was confirmed by Plaintiff's stepfather. AR 355. The ALJ's summary dismissal of Plaintiff's attempt to show good cause does not explain why the ALJ deviated from the instruction in HALLEX that "[g]ood cause for failing to appear at the scheduled hearing ***generally exists*** when an unforeseeable event occurred that prevented the claimant or the appointed representative from notifying the ALJ and requesting a postponement before the scheduled hearing." HALLEX HA 01240.025(C)(1)(b) (emphasis added); *see also Golden*, 2017 WL 4642008, at *10–11.

The Commissioner tacitly admits that the ALJ did not articulate any reasons for rejecting these submissions and finding that Plaintiff had failed to establish good cause for his failure to appear but argues "[t]here is no articulation requirement with respect to the ALJ's consideration of whether Plaintiff has established good cause . . ." Dkt. 23 at 4-5. The Commissioner argues that "[w]hile the difficulties that Plaintiff allegedly experienced around the time of the July 14, 2023 hearing date are unfortunate, the ALJ reasonably concluded that a further attempt would not be appropriate given Plaintiff's documented inability to attend the previous hearings." Dkt. 23 at 4. The Commissioner notes that "Plaintiff received numerous notices and reminder notices as to his hearing" and he was also "represented by counsel and had the opportunity to testify at multiple hearings." *Id.* According to the Commissioner, "[d]ue process does not require more, and the ALJ acted within his broad discretion in finding constructive waiver of Plaintiff's right to testify." Dkt. 23 at 5.

On this record, the Court finds that it was legal error for the ALJ to conclude that Plaintiff constructively waived his right to appear and testify. The record evidence does not show that the ALJ properly evaluated the explanations offered on Plaintiff's behalf because the ALJ did not explain why he concluded they did not constitute good cause for Plaintiff's failure to appear. *See N.Z.*, 2023 WL 2717257, at *4 (finding error where, among other things, the ALJ "failed to address whether the circumstances stated in [claimant's] explanation constituted good cause for failing to appear"); *Golden*, 2017 WL 4642008, at *10–11 (finding error where ALJ failed to evaluate whether circumstances presented good cause for plaintiff's absence from hearing).

10

Several of the reasons cited by the Commissioner in an attempt to justify the ALJ's conclusion—Plaintiff's receipt of multiple notices and his representation by counsel (Dkt. 23 at 4-5)—are not articulated by the ALJ in his decisions. *See* AR 8, 357. The Court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492; *see also Norman v. Berryhill*, No. 17-CV-04108-SI, 2018 WL 4519952, at *8 (N.D. Cal. Sept. 19, 2018).

Remand is necessary where, as here, "due process concerns are at stake." *N.Z.*, 2023 WL 2717257, at *4 (citing *Cooper v. Saul*, No. 19-CV-06635-VC, 2020 WL 5748725, at *2 (N.D. Cal. Sept. 25, 2020) ("[R]egardless of what HALLEX may or may not permit, the government must ensure that a denial of benefits comports with due process.... [I]n light of [the plaintiff's] psychiatric condition, the 'constructive waiver' may have amounted to a failure on the ALJ's part to give [the plaintiff] a meaningful opportunity to be heard."); *Holohan*, 246 F.3d at 1209 ("The Supreme Court has held that applicants for social security disability benefits are entitled to due process in the determination of their claims."); *Udd*, 245 F.3d at 1099 ("It is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied.")).

**B.      Issues Two, Three, and Four: Evaluation of Plaintiff's Impairments in the Absence of Substance Use**

Under 42 U.S.C. § 423(d)(2)(C), an individual cannot be found disabled if alcoholism or drug addiction are material to the determination of disability. In cases involving substance abuse, which the SSA refers to as drug and alcohol addiction ("DAA"), the ALJ must conduct additional analysis to determine whether the DAA is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535, 416.935. If the ALJ finds that Plaintiff's remaining limitations would still be disabling if DAA was not present, then DAA is not material. *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007). However, if the remaining limitations are not disabling without DAA, then DAA is material to the disability determination, and the individual cannot be found to be disabled. *Id.*

The ALJ summarized his findings on the materiality of Plaintiff's DAA as follows: "the claimant is under a disability, but [] a substance use disorder is a contributing factor material to the

United States District Court
Northern District of California

determination of disability." AR 19. The second, third, and fourth issues Plaintiff raises in this appeal from the Commissioner's decision, although distinct, all claim that the ALJ erred in his evaluation of Plaintiff's impairments in the absence of a substance use disorder. *See* Dkt. 15 at 6-16. Accordingly, the Court addresses these issues together.

In discussing these issues, the following context is important. The ALJ found that including Plaintiff's substance use, Plaintiff met the criteria of Listing 12.06 ("Anxiety and obsessive-compulsive disorders"). AR 22. That Listing is satisfied where a claimant meets "Paragraph A" medical requirements and either "Paragraph B" or "Paragraph C" requirements. Listing 12.06. The Paragraph B requirement is that the claimant has either an extreme limitation of one or a marked limitation of two of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt and manage oneself. *Id.* The Paragraph C requirement is as follows:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder []; and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*Id.*

The ALJ found that Plaintiff met the Paragraph A criteria (AR 22), and that does not appear to be in dispute. The ALJ found that Plaintiff met Listing 12.06 when his substance use was included because he also satisfied the Paragraph B criteria in that he had marked limitations in two areas: interacting with others; and concentration, persistence, or maintaining pace. AR 22. However, the ALJ found that Plaintiff would not meet Listing 12.06 if he stopped substance use because he would no longer meet the Paragraph B criteria of having two "marked" limitations in the relevant areas of mental functioning. AR 25. The ALJ also stated that he had considered the Paragraph C criteria but concluded that they were not satisfied if Plaintiff stopped substance use.

12

AR 25-26.

Plaintiff challenges the ALJ's conclusion that his DAA is a contributing factor material to the determination of disability on several grounds. First, Plaintiff argues that the ALJ did not properly follow the guidance outlined under SSR 13-2p, which concerns the analysis of DAA materiality to a claimant's mental impairment. Dkt. 15 at 6-10. Second, Plaintiff argues that the ALJ's "Paragraph B" and "Paragraph C" findings are not supported by substantial evidence. *Id.* at 8-10, 12-14. Third, Plaintiff argues that the ALJ improperly evaluated the medical opinion of Laura Catlin, Psy.D., who opined that Plaintiff had marked or extreme limitations numerous areas of mental functioning. *Id.* at 14-17; *see also* AR 2096-2106.

### 1.    SSR 13-2p

In addition to a polysubstance use disorder, the ALJ found that Plaintiff has a co-occurring mental disorder. AR 21. "SSR 13-2p provides the framework for analyzing DAA materiality to a claimant's mental impairment." *Albert B. v. Kijakazi*, No. 5:22-cv-00865-EJD, 2023 WL 6462856, at * 4 (N.D. Cal. Sep. 29, 2023). SSR 13-2p acknowledges that "many people with DAA have co-occurring mental disorders … " SSR 13-2p (S.S.A.), 2013 WL 621536, at *9 (Feb. 20, 2013), corrected at 2013 WL 122179 (Mar. 22, 2013). "To conclude that DAA is material, SSR 13-2p requires the ALJ to explain the rationale supporting a materiality finding so that a subsequent reviewer can determine whether the rationale meets legal requirements and is supported by substantial evidence." *Albert B.,* 2023 WL 646856, at *4 (citing 2013 WL 621536, at *2).

Plaintiff argues that despite referencing other SSRs, "the ALJ never mentions SSR 13-2p which lays out the required framework for evaluating cases involving substance use" and argues that the ALJ committed reversible error by "ignor[ing] the Commissioner's own rules for consideration of co-occurring mental disorders and substance abuse." Dkt. 15 at 10. More specifically, Plaintiff argues that the ALJ improperly relied on records from periods when Plaintiff was incarcerated in determining that Plaintiff's limitations would improve from marked to moderate in the absence of DAA. *Id.* at 11.

SSR 13-2p recognizes that "[i]mprovement in a co-occurring mental disorder in a highly

structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use." 2013 WL 621536 at *12-13. SSR 13-2p continues, "we may find that a claimant's co-occurring mental disorder(s) is still disabling even if increased support or a highly structured setting reduce the overt symptoms and signs of the disorder..." *Id.* Accordingly, the DAA materiality determination requires "evidence from *outside of such highly structured treatment settings* demonstrating that the claimant's co-occurring mental disorder(s) has improved, or would improve, with abstinence." *Id.* at *13 (emphasis added).

Most of the evidence cited by the ALJ concerning Plaintiff's improvement when not using substances is from periods when he was in jail. For example, in concluding that in the absence of DAA, Plaintiff would have only a moderate limitation in his ability to interact with others (one of the two Paragraph B criteria for Listing 12.06), the ALJ noted that "[t]he claimant sometimes appeared depressed and anxious." AR 25 (citing Ex. 23F/4 (AR 2099)). The ALJ went on to state: "However, in general, he appeared happy, with clear, coherent speech and unremarkable, cooperative behavior." AR 25 (citing Exhibits 8F (AR 1217-1533) and 17F (AR 1917-1966)). The cited Exhibits 8F and 17F are records from the Santa Rita Jail Detention Facility. *See* AR 1267, 1941.

The ALJ also discussed records from Plaintiff's periods of incarceration elsewhere in the ALJ Decision, including the following statements:

- o Plaintiff "required emergency care for psychiatric symptoms in March and May of 2018 while using methamphetamine (meth)" but "records from jail in May of 2018 indicate [he] was happy, with a normal affect and normal speech" and "[h]e displayed no suicidal thoughts or delusions." AR 26 (citing Ex. 8F/52 (AR 1268)).

- o "In July of 2018, the claimant required emergency care again after displaying self-harm behavior" but "jail records from this period indicate that the claimant was happy, had a normal appearance and affect, showed normal speech, and reported no suicidal thoughts." AR 26 (citing Ex. 8F/61-62 (AR 1277-78)).

- o "In August 2018, the claimant underwent an initial evaluation upon another incarceration, and he had a happy mood, a normal affect, normal speech, and a normal appearance" and "was pleasant, calm, and cooperative, denying feelings of hopelessness and helplessness and thoughts of suicide." AR 26-27 (citing Ex. 8F 66-67 (AR 1282-83)).

- o "In June of 2019, the claimant required an emergency visit for panic symptoms" but during this period "jail records indicate that the claimant was happy, with normal speech, appearance and affect and without trouble answering questions." AR 27 (citing Ex. 8F/101-102 (AR 1317-18)).

- o "In February of 2020, the claimant underwent a jail screening, and he appeared dirty and disheveled, but he displayed appropriate behavior and an unremarkable mood." AR 27 (citing Ex. 8F/113 (AR 1329)).

- o "Jail records from November of 2020 indicated that the claimant had appropriate behavior, clear and coherent speech, and an unremarkable mood." AR 27 (citing Ex. 8F/123 (AR 1339)).

- o "The claimant was brought to the emergency room in October of 2021. At that time, the claimant denied following up with any mental health provider or taking any psychotropic medications. AR 27 (citing Ex. 16F/4 (AR 1907)). "Further, jail records from during this period showed that the claimant had an unremarkable mood and was alert and oriented, with appropriate behavior and clear, coherent speech (AR 27 (citing Ex. 17F/25 (AR 1941)). "Upon release from jail, the claimant reported doing well, and he denied suicidal ideation, homicidal ideation, and hallucinations." AR 27 (citing Ex. 25F/22 (AR 2171)).

- o "In May of 2022, the claimant sought mental health care while incarcerated. At that time, he reported that his mood was improving. In addition, the claimant reported experiencing minimal anxiety, which he rated at a two out of ten, as he was currently clean and sober." AR 27 (citing Ex. 25F/3 (AR 2152)).

Before describing these jail records for a second time, the ALJ stated that they are inconsistent

with Plaintiff's statements regarding the severity of his symptoms because "[d]uring periods when the claimant was not able to use substances, such as during incarceration, the claimant experienced limited mental health symptoms." AR 27.

"Jails and hospitals are structured settings under the regulations." *Norris v. Bisignano,* No. 5:24-cv-09196-BLF, 2025 WL 2373351, at *7 (N.D. Cal. Aug. 14, 2025) (citing SSR 13-2p, 2013 WL 621536, at *12; case citations omitted). Thus, the ALJ could not rely exclusively on jail records in making his decision but was required to point to "evidence from outside of" the jail setting. SSR 13-2p, 2013 WL 621536, at *13. The only evidence cited by the ALJ from outside of the jail setting is that during an examination by private psychologist examiner Laura Catlin, Psy.D., Plaintiff "could recite five numbers forward and three numbers backward and perform serial 7 testing." AR 25 (citing Ex. 23F/5 (AR 2100). The ALJ erred in evaluating Dr. Catlin's opinion, as discussed in the following section.

Accordingly, the ALJ erred in finding that Plaintiff's "symptoms greatly resolved or improved in the absence of substance use" (AR 29) without first considering whether those improvements were made only in structured settings and without properly considering evidence outside of structured settings. *Norris,* 2025 WL 23773351, at *7; *see also Albert B.*, 2023 WL 6462856, at *5; *L.S. v. King*, No. 23-CV-02862-VKD, 2025 WL 588998, at *8; *Clark v. Berryhill*, No. 17-cv-00371-JCS, 2018 WL 3659052, at *29 (N.D. Cal. Aug. 2, 2018) ("Intermittent improvement ... limited to structured settings is particularly suspect as evidence that a claimant can work outside of such settings.").

### 2.    Dr. Catlin

Dr. Catlin opined that Plaintiff's "substance abuse did not cause his mental health disorder but rather [is] a consequence of his inability to manage his depressive symptoms when he was young." AR 2102. She concluded that Plaintiff had marked to extreme limitations in all areas of mental functioning, except with a mild limitation in the ability to be aware of normal hazards and take appropriate precautions. AR 2103-2104. She also opined that Plaintiff would miss four or more days of work per month and would be off-task more than 30 percent of an 8-hour workday. AR 2104. The ALJ found Dr. Catlin's assessment "is generally consistent with the evidence of

16

record" as to periods when Plaintiff is using substances. AR 24. However, the ALJ concluded that Dr. Catlin's opinion was not persuasive in the absence of substance use. AR 29. Plaintiff argues that the latter conclusion was not supported by substantial evidence. Dkt. 15 at 14-17.

Under the updated regulations, the SSA "will not defer or give any specific evidentiary weight to medical opinions, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). Instead, each medical opinion's persuasiveness is evaluated based on various factors, the most important of which are "supportability" (the extent to which the medical opinion is supported by relevant and objective medical evidence) and "consistency" (the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources). *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). An ALJ, however, "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how [it] considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (internal quotation marks omitted).

The ALJ failed to adequately address the supportability and consistency of Dr. Catlin's opinion. The ALJ found Dr. Catlin's opinion unsupported and inconsistent as to Plaintiff's limitations during periods of sobriety. AR 28-29. As to supportability, the ALJ stated that Dr. Catlin's conclusion that "the claimant's substance use was a consequence of his inability to manage his depressive symptoms when he was young and that the claimant *likely* started using meth as a way to help manage the mental health symptoms he was experiencing" is "mere conjecture" that is "not supported by any objective findings." AR 28-29 (emphasis in original). However, the ALJ did not explain why the origin of Plaintiff's substance use was relevant, nor did he identify any evidence in the record that would support a conclusion that Plaintiff's substance use stemmed from different causes. The ALJ also found that "the other portion of her opinion is not generally supported by her own objective findings, as she noted that claimant had goal-directed and logical thought processes, could recall items immediately and after a delay, and could perform serial 7 testing." AR 29. It is not clear what "other portion" of Dr. Catlin's opinion is the

17

subject of this statement by the ALJ, and the ALJ also fails to explain how Plaintiff's performance on the tasks identified by the ALJ related to the functional impairments identified by Dr. Catlin.

In addressing consistency, the ALJ found that Dr. Catlin's opinion during periods of sobriety was "not consistent with" records showing that "the claimant's symptoms generally resolved or improved in the absence of substance use." AR 29. In support of this finding, the ALJ again cited jail records indicating that Plaintiff "was happy, had a normal appearance and affect, showed clear and coherent speech, reported no suicidal/homicidal thoughts, had no trouble answering questions, and was pleasant, calm, and cooperative." *Id.* (citing Ex. 8F/61-62, 66-67, 101-102, 123 (AR 1277-78, 1317-18, 1339); Ex. 17F/25 (AR 1938). However, as discussed in section IV.B.1. above, "'the jail environment is highly structured[,]'", which requires that the ALJ "wrestle[] with that fact in making his determination." *J. C.-H. v. King*, No. 25-CV-01522-AMO, 2026 WL 673581, at *4 (N.D. Cal. Mar. 10, 2026) (quoting *Pittaluga v. Comm'n of Social Security*, 18-cv-03067-VC, 2019 WL 2897849, at *1 (N.D. Cal. July 5, 2019)); *see also Chanel A. v. O'Malley*, No. 4:24-CV-08215-KAW, 2026 WL 886619, at *6 (N.D. Cal. Mar. 31, 2026). "Indeed, courts in this district have found that jail records do not provide the most accurate portrayal of a claimant's mental health conditions, because '[a]n inmate may have incentives not to give truthful information, and because the jail environment is highly structured, it may be difficult to meaningfully assess a person's ability to cope with the ordinary demands of everyday life from jail records alone.'" *Chanel A.*, 2026 WL 886619, at *6 (citing *Pittaluga*, 2019 WL 2897849, at *1; and *J.C.-H*, 2026 WL 673581, at *4).

Accordingly, the ALJ's conclusion that Dr. Catlin's opinion was not persuasive as to periods when Plaintiff is not using substances is not supported by substantial evidence. This error is prejudicial because Dr. Catlin opined that Plaintiff had marked limitations in far more than the two areas necessary to satisfy the paragraph B criteria for Listing 12.06 AR 2103-2104. In addition, she found that Plaintiff would miss more than four days of work per month (AR 2105), and the vocational expert testified that there would be no work available to a person who would be absent two days a month. AR 97.

### 3.    Paragraph B and C criteria

As discussed in more detail above, the ALJ found that, inclusive of substance use, Plaintiff would have marked impairments in the following "paragraph B" criteria, which were sufficient to meet Listing 12.06:  interacting with others; and concentration, persistence, and pace.  AR 22, 24. When the ALJ subsequently considered Plaintiff's limitations in the absence of DAA, the ALJ found that Plaintiff would have only moderate limitations in those two areas and therefore did not satisfy the paragraph B criteria of listing 12.06.  AR 25.  The ALJ stated that he also had considered the Paragraph C criteria but concluded that they were not satisfied if Plaintiff stopped substance use.  AR 25-26.

The Commissioner admits that in evaluating the paragraph B and paragraph C criteria for the Listings, "the ALJ relied heavily on records from times when Plaintiff was incarcerated."  Dkt. 23 at 8.  For the reasons discussed in section IV.B.1. above, that was error.

The Commissioner offers arguments that might support the ALJ's reliance on jail records:

> Contrary to Plaintiff's bald assertion, jail is not a "highly structured *treatment* setting" (emphasis added).  Plaintiff was not in a psychiatric hospital or in rehab— he was in jail.  While that environment made it hard for him to obtain illegal substances, it was also certainly a highly stressful environment; yet Plaintiff's mental impairments repeatedly improved when he was forced to stop methamphetamine.  Plaintiff himself reported that his anxiety was greatly reduced in June of 2022 because he was clean and sober (Tr. 2152).

Dkt. 23 at 8.  The problem with the reasons offered by the Commissioner is that the ALJ did not articulate them in the ALJ Decision, so the Court cannot review them.  *See Brown-Hunter*, 806 F.3d at 492; *see also Norman*, 2018 WL 4519952, at *8.

Because of the ALJ's errors in evaluating Plaintiff's limitations in the absence of substance abuse, this case will be remanded.  *See Norris*, 2025 WL 2373351, at *15.

### C.    Issue Five:  Disregard of Lay Testimony

Plaintiff argues that the ALJ improperly ignored "two different statements regarding Plaintiff's mental illness, symptoms, limitations and living situation" provided by Plaintiff's stepfather, Phillip Lindeman.  Dkt. 15 at 18 (citing AR 355, AR 556).  One of the statements is dated July 2, 2022 and is identified in the list of exhibits attached to the ALJ Decision.  AR 556;

AR 37.  The other statement by Mr. Lindeman is dated July 18, 2023 and was included in Plaintiff's response to the Request to Show Cause issued following the July 2023 ALJ hearing. AR 355.  That response is also listed in the list of exhibits to the ALJ Decision, although the list of exhibits incorrectly lists the date of the response as "07/19/2022" (AR 34), when the correct date of Plaintiff's submission is July 19, 2023 (AR 355).  Other than including these documents in the list of exhibits, the ALJ Decision does not mention, must less evaluate, the statements provided by Mr. Lindeman.

Under long-standing Ninth Circuit law, in determining whether a claimant is disabled, an ALJ was required to consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citations and quotation marks omitted); *see also Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account").  An ALJ was required to have reasons that are "germane to each witness" to reject lay witness testimony.  *Diedrich*, 874 F.3d at 640.

The ALJ's failure to evaluate or even acknowledge the statements of Plaintiff's stepfather would constitute error under the "germane reasons" standard.  However, the Commissioner argues that under revised regulations that apply to claims filed after March 27, 2017 (including Plaintiff's claims in this case), there is no requirement that an ALJ articulate how persuasive he found nonmedical, *i.e.*, lay witness evidence.  Dkt. 23 at 12.  According to the Commissioner, the Ninth Circuit has explained that "it is clear that [ALJs] are no longer required to articulate" their consideration of nonmedical evidence under the revised regulations.  *Id.* at 14 (quoting *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) and *Kennedy v. O'Malley,* No. 22-35866, 2024 WL 242992, at *2 (9th Cir. Jan. 23, 2024)).  However, the Commissioner concedes that "there remains no published Circuit law on this issue."  Dkt. 23 at 14.

Because the Court is remanding the case for other reasons, it declines to address the open question of whether under the new regulations the ALJ is still required to provide germane reasons for discounting lay witnesses.

20

**D.      Issue Six:  Remedy**

The Court will remand this case because of the errors in the ALJ's analysis discussed above.  The Court now assesses the appropriate remedy on remand.  Plaintiff argues that "because the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Dr. Catlin[,] [t]here are no outstanding issues that must be resolved to make a disability determination" and "the ALJ would be required to find Plaintiff disabled at Step 3 of the sequential evaluation process or, alternatively at step 5."  Dkt. 15 at 18-19.  Plaintiff argues that the case therefore should be remanded for an immediate award of benefits.  *Id.*  The Commissioner counters by identifying two reasons it believes that remand for further proceedings is appropriate:  (1) "further administrative proceedings would be necessary to resolve the conflicts in the record, such as Dr. Catlin's largely normal objective findings as contrasted with her finding of marked and extreme limitations"; and (2) Dr. Catlin "did not state what limitations Plaintiff would have if he stopped using methamphetamine" but instead "noted that '[i]t is difficult to determine if his inability to function in the workplace would continue if he was able to remain sober.'"  Dkt. 23 at 15 (quoting AR 2102).

When an error is found, "the court ordinarily must remand to the agency for further proceedings before directing an award of benefits."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citation omitted).  The Court may instead remand for an award of benefits only if the three factors of the "credit-as-true" rule are met. *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014).  First, the Court determines whether the record has been fully developed, if there are any outstanding issues that must be resolved, or if further administrative proceedings would serve a useful purpose.  *See Leon*, 880 F.3d at 1047.  Second, the Court determines whether "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Garrison*, 759 F.3d at 1020.  Finally, the Court analyzes whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Id.*  Even if all three factors are met, however, the Court may decline to remand for an award of benefits if, upon review of the record as a whole, there is "serious doubt" that the claimant is disabled.  *Id.* at 1021; *see also Albert B. v. Kijakazi*, No. 5:22-

21

CV-00865-EJD, 2023 WL 6462856, at *3 (N.D. Cal. Sept. 29, 2023).

Here, the Court concludes that remand for an award of benefits is justified. The ALJ found that Plaintiff met Listing 12.06 and was disabled when using substances, and he found Dr. Catlin's assessment generally persuasive as it related to Plaintiff's limitations in that context. AR 24. He also found that the state agency medical consultants reported that there was insufficient evidence to evaluate Plaintiff's limitations and therefore their assessments had no probative or persuasive value. *Id*.

As discussed above, the ALJ's finding that DAA was material to Plaintiff's disability was erroneous because the ALJ did not conduct the appropriate analysis under SSR 13-2p, he placed undue weight on records from Plaintiff's periods of incarceration, and he erroneously discounted the medical opinions of Dr. Catlin.

The record has been fully developed, and the Commissioner does not identify any additional medical opinions would be appropriate or necessary to resolve the DAA materiality issue. Moreover, as discussed above, the ALJ erroneously failed to properly consider evidence from outside the structured jail setting in demonstrating that Plaintiff's co-occurring mental disorders had improved or would improve with abstinence, and the Commissioner does not identify any additional evidence that could properly be developed on this issue on remand.

As presented by the Parties in this case, the state of the record is that aside from state agency medical consultants' reports (which the ALJ determined had no probative or persuasive value) and the jail records (which the ALJ erroneously evaluated as discussed above), there is Dr. Catlin's opinion. Dr. Catlin evaluated Plaintiff at a time when he reported having been sober for two days yet found that Plaintiff had marked to extreme limitations in most functional areas and that he would be absent from 4 or more days per month. AR 2098, AR 2103-05. Had the ALJ, who had already concluded that Plaintiff was disabled with substance use, properly credited this evidence, he would be compelled to find that Plaintiff's substance use was not material to his mental impairments.

Upon review of the record, the Court concludes there is no "serious doubt" as to Plaintiff's disability. Again, the ALJ found Plaintiff to be disabled with substance use and found Dr. Catlin's

22

opinion persuasive in this context, and he erroneously discounted her opinion as to Plaintiff's limitations in the absence of substance use.

For these reasons, the Court exercises its discretion to remand this case for an immediate calculation and payment of benefits.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for an immediate calculation and payment of benefits.

**SO ORDERED.**

Dated: June 4, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

23